Our next case, 25-1142, Martinez v. City of Aurora, Colorado. May it please the court. Holly Burkholz on behalf of the City of Aurora. I will endeavor to reserve five minutes in rebuttal. This case analyzes color of law and asks this court to hold that a violent attack carried out by someone on administrative leave cannot be an action taken under color of law as a matter of law. It is undisputed that Douglas Haroon was on administrative leave Could you speak up a little, please, sir? Yes. It was undisputed that Douglas Haroon was on administrative leave from the Aurora Police Department when he violently attacked Wyoming Martinez. She alleges this action was taken under color of law, but this is legally impossible. Color of law requires two separate elements. Actual authority and purporting to act under that authority. So it sounds like you're adopting the Linn-Key-Fred framework here. Yes, absolutely. And the Linn-Key test that was a two-part test, that has been a longstanding test. It's not a new test that's been created by Linn-Key, which the Mackey Court recognizes. And the West v. Adkins test, or West v. Adkins case from 1980. All Linn-Key does is say you can't rely on apparent authority. That's all it says, right? That in the district court's first order, she didn't look to actual, she didn't think actual authority was there. She looked at apparent authority. Linn-Key says, no, it has to be based on actual authority. Is that right? So if that's all that Linn-Key does, then the test for actual authority is where you need to be focusing your arguments. Absolutely. And that's the city's argument, that actual authority is lacking, and that you cannot look only to apparent or sensible authority. And we believe that Haroon lacked actual authority for two reasons. First and most significantly, that the leave order stripped him of his ability to act as a sworn police officer, which he acknowledged with his signature. This court's analysis can stop right there. But secondarily, Haroon's assault for which he was charged with three felonies was a purely personal dispute. Well, it was a purely personal dispute. I mean, he identifies himself as a police officer. He tells her she's under arrest. He gives her his badge number. He is clearly operating, and he says that he used the takedown procedures that he'd learned as a police officer, and that he arrested her for assault on a police officer. You know, it seems to me like that he is operating under color of state law. Well, I would disagree with you, Your Honor, respectfully. This incident actually started when Haroon pinned Martinez with his car against a garage in their mutual apartment complex for walking her dog too slowly. Then that led both Haroon and his wife to exit their car and corner Martinez. Then Haroon took Martinez to the ground, strangled her and punched her. Regardless of his announcements, that is instigating a dispute. And the Zambrana case makes very clear that there is a difference in police function. When you are instigating a dispute, that is something that is a purely personal pursuit versus when you intervene in a dispute, which the Zambrana case says is a police function. Help me understand where we're supposed to be looking in terms of just the elements of what actual authority requires. Do you agree that actual authority requires that the agent have both a subjective belief and that that belief is objectively reasonable? Do you agree that that's the correct framing of the black letter law on what constitutes actual authority? I would say that actual authority is entirely dependent on what the government gives or does not give. And that's a policy perspective because if you allow an imposter to decide when the government is liable, that would leave the imposter in control. And that's not the intention of section 1983. That removal, the government's removal of control is blatantly inconsistent with section 1983. Similarly from a policy perspective on the due process front when the government, the government has to provide due process to public employees when they are under disciplinary investigation. And typically during these investigations, employee authority is either limited or completely removed as it was here. And if an employer has taken the affirmative step of removing authority then, but the employer could still be held liable for the employee's actions that would leave the government strictly liable. And that is not the, that, that is not the intent. So is it your position that not withstanding officer Haroon's subjective belief in his own authority, that that would be objectively unreasonable in light of the leave order? I think that the objective reasonableness really goes to the purporting to act element and we don't even get there. But I do agree when you're looking at purporting to act, his beliefs respecting the leave order itself have to be reasonable and anything that disagrees with the leave order because his signature was on it would be unreasonable. But again, that speaks to the second element. And I think that we are, the city is focused on the first element, which is authority actual authority in the first place. How does the off duty, how did the off duty rules apply to the leave order? Sure. And on this point, the complaint makes several conclusory allegations regarding the applicability of the off duty directive. And most importantly, it also quotes it. And the complaint quotes the off duty directive is reading sworn members confronted with an off duty situation. And then if you compare that with the leave order that Haroon was issued, it specifically says he was not to take action as a quote, sworn police officer. So if you are looking at the quoted language of the leave order and comparing it to the off duty directive, it doesn't even apply. Well, why isn't that ambiguous as the district court here concluded? It was at least for at this procedural stage. I don't believe it is ambiguous. I think that the court allowed was permitted to rely on conclusory allegations because the remainder of allegations in the complaint regarding the off duty directive are conclusory. They simply say the off duty directive permitted it, but this is the actual language from the leave order itself. And it does not permit this action. It doesn't the leave order says it doesn't permit any action, right? Any action to act as a sworn officer. So the critical language here is sworn police officer. And that is how the Aurora police department couches authority. Why didn't they confiscate his badge? In an ideal world, they could have, but that is again, not determinative here either because the leave order is dispositive on this point. The leave order told him that he had, he was specifically prohibited from wearing his uniform of which his badge is apart, but then you also get to this. Well of which has badges apart is not in the leave order. Right. And I mean, that's, that's at least the other side, your, your, your friend on the other side is contending. That's, that's quite an important factual leap that you're making inappropriately. So at this stage, sure. And even if you, even if you set that aside, actual authority is lacking because the, the allegations in the complaint itself have no relationship to any police function. So as we we've already discussed his actions. Well, so if the off duty directive were applicable, would you still say that the actions had no, no apparent authority here or no actual authority here? If he's operating under the off duty directive, Can you restate your question, please? Yeah. Ignore for a minute, the leave order focus on the off duty directive. Would you still argue under the off duty directive that the actions he took were unrelated to his position as a police officer? Absolutely. So I think, and this is because he first entered with his car, that that's your argument. And that, that it doesn't matter that he got out and declared himself a police officer and told her she was under arrest and none of that matters. Absolutely. Yeah, absolutely not. Several cases when officers or those on leave or those off duty have announced themselves as police officers and shown their badge. The courts have found that there's still no color of law. And those include the Gibson case, the Bauer case from the Northern district of Illinois and the Perilla Burgos case, which was cited by Zambrana in the first circuit. And the Van Ork case also says that merely because an officer is recognized as one does not transform a private act into purely personal. Well, let's look into those. Gibson, they took everything. I mean, they took his badge. They took his uniform. They told him he wasn't allowed. They gave that he couldn't, he was prohibited from carrying his gun or any other direct deadly weapon. Here they left him his badge. They also left him his badge and his gun in Gibson. He did not, or I apologize. He turned in his badge. He did announce himself as a police officer though. And in the Bauer case, he announced himself as a police officer and had his badge. And in both of those cases, there was found to be no color of law. And significantly though, the dry case is an unpublished case. It does quote that the Supreme court has never held that objective indicia without more brings one's purely personal pursuits under color of law. And that's significant because again, you would be taking the acts of an imposter and then holding the government strictly liable for those actions. And unless this court has additional questions now, I'll reserve the remainder of my time. Go ahead. Okay. Thanks. May it please the court. My name is Zach Warren and I have the privilege of representing why I'm a Martinez. Who's the plaintiff appellee in this case. This interlocutory appeal presents a single narrow question and that is whether defendant Haroon was acting under color of law. So my attention is to address the color of law argument along two related threads. The first, I want to highlight only the critical facts of the Martinez Haroon encounter itself. And then I want to talk about facts specific to the city and the Aurora police department, which are necessary to properly contextualize this incident. Let me ask you a question first. Do you, do you agree that the two things we're looking at are actual authority and purported use of that authority? We're of the belief, your honor, that Lincoln did nothing to fundamentally change the court's analysis that the district court engaged in. I mean, it doesn't, it doesn't purport to, it says it's clarifying past decisions. That's exactly correct. So it's not announcing any sort of new test. It does not represent. Do you agree that's the test actual authority and purported use of that authority? We do not believe that the district court has any appropriate factors to apply or what are laid out in the dry case. And so we think that the district court evaluated those factors, one of which is actual authority. And we think that Linkey, if it applies in this context at all, simply clarifies what actual authority means. Okay. Well, how does Linkey clarify what actual authority means? What Linkey clarifies is that you cannot establish color of law by reliance on a parent authority. Right. I think that's one of the things that it establishes specifically in the context of a first amendment case that has to do with free speech and where they're competing constitutional values. Okay. Well, help me understand how to read the district court's original order. And then the order on reconsideration. So the district court's original order predates Linkey. And in that order, she concludes that in analyzing the actual authority question, she would find in favor of your opponent and instead focuses on a parent authority as the basis for allowing the case to proceed. Correct. That's correct. Okay. Then the law does not change. The only way that it changes is to tell the district court that a parent authority is not available anymore to establish color of law. Correct. I think that's correct. And this is all on the basis of the face of the complaint, right? Yes. Okay. So that's static. The facts have not changed. The law hasn't really changed other than to eliminate the district court's choice in her choice-making. There's no more choice. It has to be actual authority. So how do we explain that then on reconsideration, the district court on the basis of the same facts finds actual authority. This is why we think that the Linkey case is a very, very helpful guide post for the actual authority analysis. So before Linkey courts really struggled with the difference between the absence of authority and what Linkey does is it helps center that discussion when, whether the alleged action is with within the general type of authority that was conferred to the government actor. So to sort of illustrate the point here, your honor, and this is going to be something where we agree with my colleague on the other side, we agree that an imposter with a badge cannot simply use that objective indicia of authority to act under color of state law. There has to be a source. So for instance, if defendant Haroon had been working as a traffic enforcement officer, who's not post-certified never possessed the authority to arrest or detain or use force. It's not the fact of the badge. It's not that it says the city of Aurora it's that he was hired for a specific in unique power. And that is the state's monopoly on the ability to wield the use of force. And so Linkey helps us identify what is actually within the job description and a colloquial term in whether the challenge conduct falls within the scope of that type of authority. Do you agree that the elements just talking black letter law, that the elements of actual authority require that you plausibly plead Mr. Haroon's subjective belief in his authority and that that was an objectively reasonable belief? Yes, your honor. Both. I think that they are appropriate considerations because as the district court pointed out, when we are looking at the use of authority, when we're looking at the color of law argument in the context of a fourth amendment claim, when we're talking about it in an excessive force claim, the courts look to several different things. We favor the four drive factors. One of those is the subjective belief of defendant Haroon himself. And I'm happy to share why we think that's a reasonable belief in some of the facts that are specific both to this incident in the nature of his leave, but also the broader context within the city that makes that belief plausible. Yeah. I'm, I'm particularly interested in that, in that question is that he, if we assume that you have plausibly pleaded his subjective belief based on the con the specific conduct that we're looking at with respect to your client, why have you plausibly pleaded that that is an objectively reasonable belief? So the best way to demonstrate this might be through contrast. So let's talk about what it looks like in an instance where an officer had authority and then was fully dispossessed of that authority. So let's look at the Gibson case. Okay. In the Gibson case, the officer went through a formal process that looked at his conduct in his medical fitness for duty. At the conclusion of that formal process, there was a finding that he was quote unfit for duty. As judge McHugh pointed out, he was dispossessed of his uniform. He was dispossessed of his badge. He was dispossessed of his shield. There was no, not as firearm, not as firearm. That's correct. They were supposed to dispossess him of the firearm, but that's where the city messed up. And incidentally, that represented a separate independent state action. And the Monell claim went through on that basis. But the intention, the signal to him is that you are done policing. There was no reason for him to believe that he was going to be coming back. And he was not subject to any other requirements of the department. He didn't have to check in. He didn't have to be available. There was no question that that was a final decision specific to him. So let's contrast that. Well, let's contrast that. So here we have the leave order that tells him that he can't anymore undertake the duties of a sworn police officer. Right. And then you have the off duty directive that I think you've been relying on that is a directive to sworn police officers. So, I mean, isn't the city correct that he should have did? It was pretty clear that he had no, he had no authority under the off duty directive once he was no longer a sworn police officer. So I would respond to that in two ways. Your honor. First is he had every reason to believe, and I'd like to go through and actually contrast this with the Gibson case. He had every reason to believe that he was coming back in this operated very differently than a formal decision as we had in Gibson. So one thing about this. But he did know that at the time he had been dispossessed of the authority that he had as a sworn officer, he may have thought he was coming back at some point, but on that day, he was on notice that he didn't have that authority. We agree that part of that memo directed him to not take any affirmative action as a police officer. But to contrast, this was with Gibson. Let's talk a little bit about the facts of this memo. And then let's talk about the context that it operated in. So for one, in the memo itself, just on the plain language of it, he is still entitled to keep his badge. He's still entitled to keep his uniform. He's still entitled to keep his service weapon. He is still beholden to all of the other directives and responsibilities of the department. They are not separating from him beyond that. He can be disciplined if he fails to faithfully implement any of these other directives. It's also very clear that this is something that happened automatically by virtue of his involvement with a critical incident. So this is not a determination that he engaged in wrongdoing. There's nothing here saying that he violated any sort of rule. There's nothing here that says that he is unfit for duty. Well, so, so your, your argument relies on the distinction, the operative distinctions. I understand your argument is that, uh, in order to, uh, to satisfy the subjectively reasonable belief, he has to be fully dispossessed of authority. That's, that's your position, right? I think that's correct, Your Honor. Okay. And so what is it about the record that we have before us? And I know the district court found some ambiguity around this and allow, and that is why the case proceeds, but what is it about the record we have before us, which says, uh, don't take any action, any action as a sworn police officer. Uh, why does that not clearly put, uh, officer Haroon on, on notice that taking action as a sworn police officer would be objectively unreasonable. So this is part of the through line that goes to the broader context within which this entire thing is playing out. And that has to do specifically with the city of Aurora. So one thing that we would really underscore here is that this did not happen in a vacuum. Okay. And so the city's position throughout this litigation has been to try to atomize this specific memo to pull this one memo in the absence of any other context and to focus on that one line. Okay. But this is the predictable result of the city of Aurora doing what Aurora has repeatedly done. That is hiring dangerous officers, individuals with known red flags who have demonstrated that they know are unwilling or unable to comply with orders. So I appreciate what you're saying, but in order to dispose and assess your claim or your appellate claim, we need to situate it in somewhere. Right. And so what you, when you say look at context to help understand, are you now talking about your alternative grounds for affirmance? No, Your Honor. We're saying that in this particular case, given facts that are unique and specific to the city of Aurora, to the fact that they're under a consent decree, to the fact that they have an independent monitor, he had every reason to believe that this would be resolved in his favor. In contrast to the officer in Gibson, where there was a formal process, there was a finding that he was unfit for duty and that that was a one way door. Defendant Haroon had every reason to believe this was a two way door. Well, we don't, we don't know what was going to happen to him. I mean, he may have had an impression on, on the, you know, way the department treated officers, but he didn't know that he was going to be absolved after investigation. And after he was on administrative leave, I mean, and even if he did, why does it matter? They told him not to take action. That's correct, Your Honor. And if Linkey makes anything clear, and if the cases interpreting Linkey, including Mackie, make anything clear, it's that we have to look through the directive itself. So we readily concede that defendant Haroon probably did not comply with this memo in precisely the way that they would have preferred. We're not taking the position that the city wanted any of this to happen. We're simply saying that they did everything imaginable to create the conditions for this to happen. And the idea. Those, those things were all things that did not happen in connection with this, right. They were all precursor events on the way they treated officers. The fact that they're on a consent decree that they always let the bad cops who won't comply, come back. I mean, those were all precursors to this, right? There are certainly ample precursors, but there are also things that happened in the interim here, even after he feloniously shot an innocent civilian and harmed two people during that particular incident, there was a separate call for service to his residents. In your view, can the city ever short of actually firing a police officer with withdraw authority for that police officer to act as a sworn police officer? Without question, your honor. Yes. I think there's something between this case between B before we get to Gibson. Right. Absolutely. Your honor. Yes. And what did they have to do here that they didn't do other than confiscating his badge? Is that it? If they had confiscated his badge, which would you concede that there was no authority here? I think that the case would be much more difficult if they had done any of a number of things that were available to them to intervene, including taking his badge, taking his uniform, instead of telling him you need to be available during business hours, you've got to have your phone with you. You've got to go ahead and make your court appearances. They could have signaled to him that his authority was entirely dispossessed and they could have taken away the actual emblems of his authority that allowed him to abuse my client, that led other people in the community to understand that he was acting before,  and after the interaction on behalf of the Aurora police department in pursuant to his training by the, by the Aurora police department. Even if the leave order could have been better and could have been more specific and provided precisely the sort of guidance that you are pointing out as absent here, it is so broad in it's a very simple conclusory phrasing, any action. And so I just don't understand why the badge as part of the uniform matters at all. They could have kept, you know, told him to keep his uniform in the closet, put the badge in the, in the, it doesn't matter. It's any action, any action. And so showing the badge is, is arguably an action that a sworn police officer takes. So I help me understand why that language, the any action language isn't enough in this case. Your Honor, see my time's up. May I go ahead? Thank you. So in very short, the reason for that is because there is a through line here. It goes all the way back to the hiring of defendant Haroon where Aurora habitually as a matter of, as a matter of pattern and practice, regularly rolls the dice and then tries to distance itself with the inevitable results, harm, innocent civilians, which allegations in your complaint, tell us what you just said here at the podium. So it starts even before defendant Haroon was in the picture with respect to the civil service commission and their, but relative to their peers, there are low hiring standards or low cutoff scores. And when defendant Haroon came in, according to the independent monitor who used his hiring as a case study in the problems within the Aurora police department, they knew he had red flags. They knew he was unfit for duty. They knew he represented a risk of physical harm to the community. And after a quote contentious decision, they went ahead and rolled the dice. And so they're trying to sever that clear through line of authority to their own official decision-making and policies from the inevitable result. So, so it found, it sounds like part of your position is is if the Aurora police department had better hiring policies and if they hadn't hired a bad cop, then whoever they hired would have listened to the directive, not to take any official action or action as a sworn police officer. And this would have never happened. It certainly would have helped your honor. Okay. Thanks counsel. You're out of time. Thank you. I would like to pick off, pick up where that discussion ended, which is the allegations regarding hiring of Haroon. Those are all allegations that go to a Monell claim. That is not what we are talking about here. We are talking simply about color of law, actual authority and apparent authority or purporting to act under that authority. So whether the city is under a consent decree, whether it hired it in the first place, that has nothing to do with what we're talking about. Why does, well, we're not talking about apparent authority because that is out of the that we just ended on with, with your friend on the other side, relevant to assessing whether Mr. Haroon's belief is objectively reasonable because it does not go to actual authority, actual authority. At the time, this incident happened, the city had removed it. So regardless of whether they hired him in the first place, they had removed his ability to act as a sworn police officer at the time this incident occurred. And so that is the relevant timeframe that we look at not before, not after had the city not done that, that would have been a relevant analysis, but that's not what we're looking at in our vacuum. Isn't part of the problem here. I mean, we've had a lot of talks about guns and badges and wouldn't have been, wouldn't it have been more clear that he'd been stripped of his duties as a sworn officer. If his badge and his gun had been taken away. Surely it could have been a clearer picture, but that's not the fact before us. And so we have to look at the facts before us. And even if you consider those, I mean, it is a factual forest. They weren't taking, they weren't taken away. Sure. But even like, and it all goes back to actual authority and the fact that actual authority was stripped from him per that leave order. And he was told about it and he signed it. And in our opinion, that's where it stops. But even the fact that he was bound to do a few other things or bound by other directives, like either a code of ethics, or that he was required to show up in court as needed. The case law suggests that this doesn't matter. The Bauer case and the row case from the ACE circuit, both suggest that even though you're, you're bound by a code of ethics, if you are stripped of your police power, that is the most determinative factor. So those other underlying matters do not matter. Also, I'd like to address the, the dry factors and, and regarding the purporting of Haroon's belief, I would point out that the second amended complaint at paragraph 71 actually reads clearly controverted by the evidence Haroon attempted to justify his violent behavior and use of excessive force post hoc by representing that he took necessary and appropriate actions pursuing to his training as an APD officer. So at least in some regard, the complaint acknowledges that what he did, he knew that he was not supposed to do. And finally, I would advance that the city's the city's suggestion for the holding in this case would be taken directly from Bauer, which is a bright line test that is as a matter of law, even a police officer on administrative leave cannot be acting within the course and scope of his employment, even if that officer is engaged in direct police action. And while the city is certainly sympathetic to Ms. Martinez, there is simply no basis in law to hold the city liable for for Haroon's  because this is an officer on suspension is in a qualitatively different position than one who's merely off duty. And that is a significant fact here. So we would ask that you find that Haroon did not not act under color of law and suggest that the city cannot be held liable for his actions. Thank you, council. Thank you. Okay. The case will be submitted and counselor excused.